ELKINS *v.* MILLIKEN, SECRETARY OF STATE.

## No. 11,690.

PEOPLE EX REL. ELKINS *v.* MILLIKEN, SECRETARY OF
STATE, ET AL.

Decided September 30, 1926.

Proceedings to enjoin the placing of an initiated meas-
ure on the ballot.   Judgment for respondents.

### *Reversed.*

1.   INITIATIVE AND REFERENDUM—*Title of Initiated Measure—Committee.*
Whether in fixing the title of initiated measures the attorney gen-
eral and secretary of state may act by deputy, considered but
not decided.

2.       *Petition—Signers—Protest.*   Petitions for initiated measures
must show the residence of signers and the date of signature.
Whether a protest should specify the names protested, not de-
termined.

3.       *Petition—Mutilation.*   The separation and alteration of sec-
tions of a petition to initiate a measure, destroys the integrity
of each one so separated and altered, and renders it worthless.

4.       *Petition—Injunction—Pleading.*   Complaint in equity to enjoin
the placing upon the ballot of an initiated measure, held to state
a cause of action.

5.       *Petition—Injunction—Legal Remedy.*   Section 31, C. L. '21,
concerning protests to petitions for initiating measures, held not
to provide an exclusive and adequate remedy so as to deprive equity
courts of jurisdiction.

6.   ELECTIONS—*Courts.*   Courts may interfere in matters preliminary to
elections, e. g., determining the validity of a petition to initiate
a measure.

7.   PLEADING—*Another Suit Pending.*   It not appearing on the face of
a complaint that there is another suit pending, such objection may
not be raised by demurrer.

8. INITIATIVE AND REFERENDUM—*Validity of Petition—Another Suit Pending.* Proceedings before the secretary of state to determine the validity of a petition to initiate a measure, held not to be another suit pending so as to oust a court of jurisdiction in an action to enjoin the placing of the measure on the ballot.

9. *Petition—Protest—Courts.* The provisions of section 31, C. L. '21, concerning the sufficiency of petitions for the initiation of laws, have no application to actions in court.

*Error to the District Court of the City and County of Denver, Hon. James C. Starkweather, Judge.*

Mr. DONALD C. McCREERY, Mr. HUBERT D. WALDO, JR., Mr. GEORGE A. CARLSON, Mr. W. R. RAMSEY, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. S. E. NAUGLE, Assistant, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

A certain petition for an initiated amendment to repeal section 13 of article 12 of the Colorado Constitution, known as the civil service amendment, was filed with the secretary of state pursuant to C. L. §§ 26–32; a protest against the petition was filed in accordance with § 31; it was overruled by the secretary of state, whose action was sustained by the Denver district court, and the protestants come here with a petition for review in accordance with the last mentioned section, which proceeding is here numbered 11,689.

A suit to enjoin the secretary of state from placing this question of the repeal of said constitutional section upon the ballot for the coming election in November

was also brought in the name of the people on the relation of Elkins. A demurrer to the complaint was sustained; the plaintiff elected to stand and the case comes here on error as No. 11,690. The grounds for the injunction were in most respects the same as those of the protest and the two cases have, therefore, been considered together, and so far as possible will be treated so in this opinion.

The first objection to the petition is that the title of the proposed initiated bill was not prepared in accordance with the statute, because the secretary of state is required by section 26 to "call to his assistance the attorney general and the reporter of the supreme court, the three of which, a majority controlling, shall  *  *  * designate and fix a proper and fair title for said proposed law"; yet the secretary of state and also the attorney general acted by deputy only.

The second objection is that a large number of names, sufficient to reduce the whole number below the constitutional requirement of eight per cent, were not accompanied by a statement of the residences of the signers and the dates of their signing, as required by C. L. section 29, and by the Constitution, article V, section 1.

The third is that after the several sections of the petition, which number several hundred, had been returned to the committee appointed by the petitioners, they took them to Canon City, and there tore each section apart into its separate leaves, lengthened each sheet by pasting paper on its end, so as to meet the statutory requirement of size (C. L. § 30); altered, completed or entered many residences of the signers and the dates of signing thereon, reassembled the parts and furnished them to the secretary of state as a valid petition.

Upon the first point: The court is not unanimous upon the question of the power of the deputies to act for their principals in such a case as the present, and since it is not necessary, we do not decide that point.

As to the second question, we are all agreed that the careful entry of the residence (not mere post office address) of each person with each name should be made at the time of the signing thereof, and should show, in all cities and towns where there are street numbers, the street number of the residence of the signer, in accordance with section 29. We think this a very important provision, and the most efficient provision against fraud in the statute, that it is essential to an intelligent protest and that it should always be carefully obeyed; and the entry of the date of the signature is only less important, both being mandatory by the Constitution, article V, section 1, and the statute, C. L. § 29. It is claimed that in the matter of the review of the action of the district court upon the protest, that since the protest did not specify the names protested in accordance with the requirements of section 31, that that objection cannot be maintained in this case. This question, like the first, we do not find it necessary to decide.

As to the third objection, we are all of the opinion that the separation and alteration of the sections of the petition destroyed the integrity of each one so separated and rendered it worthless; that the petition bears internal evidence that practically all of it was so treated. The grounds for our decision are that the statute requires that to each section "shall be attached an affidavit of some qualified elector that each signature thereon is the signature of the person whose name it purports to be and that to the best of the knowledge and belief of the affiant each of the persons signing said petition was at the time of the signing a qualified elector." When these sections of the petition were taken apart and altered, we can see no ground to support the theory that the affidavit is any longer of force, and all those sections are just what they would be if no affidavit had ever been attached. We do not attach importance to the mere lengthening of the sheets, but to separate a solemn instrument into

the separate sheets of which it is composed and re-attach the sheets to the affidavit, especially without the presence of the affiant, opens a door to fraud which we cannot tolerate, and more especially is this true when, as in this case, while the sheets were separated, or at or about that time, the statement of the residences of the signers and the dates of signing in many cases were altered or entered for the first time. It may be claimed that this alteration did not change that part of the petition to which the affidavit refers, viz, the identity of the signer, the genuineness of the signature and the qualification of the signer as an elector, but the objection is not a valid one. Who knows but the entry of the address would convince the affiant that he was wrong in his affidavit? Next to the name of a man his definite residence is one of the surest methods of identification.

Our conclusion is that the petition, so far as the sections which were opened are concerned, is invalid, and as there is no question from the inspection of the petition itself, nor is it questioned in the briefs and arguments, that this will wipe out practically all signatures, we must hold the petition invalid as a whole. This objection is not affected by the omission to designate the names protested, because it goes not to the individual signer nor to his name, but to the integrity of the affidavit to each section and so to the integrity of the section itself, i. e., the names are not protested, but the validity of the mutilated sections themselves is attacked.

The decision of the district court in No. 11,689 is reversed and it is directed to order the secretary of state not to place this measure upon the ballot.

As to the equity case No. 11,690, it is urged that the complaint stated no cause of action, that there was no equity in the bill and that the court had no jurisdiction to grant the prayer. As to equity, the allegations are, that many of the names in the petition were forged, many were duplicates and many lacked the statement of

the residence of the signers or of the date of signing both of which are required by the Constitution, article V, section 1, and the statute, C. L. sec. 29, and that certain of the affidavits to the various sections of the petition were false, and show that the number of such errors and omissions is so great that the particular signatures to said petition are insufficient in number to meet the requirements of the statute, and by reason thereof the petition is so permeated with fraud as to be worthless to initate the amendment. These facts are sufficient to show fraud and fraud is a typical basis of equity jurisdiction. The bill, therefore is not bad for want of equity, and these facts show a cause of action.

But it is said that there is an adequate remedy at law, to wit, the protest before the secretary of state and the review thereof by the district court under C. L. sec. 31. Counsel for the plaintiff in error answer this by saying that the proceedings before the secretary of state are inadequate since there is no power to summon witnesses and therefore no power to prove fraud or any other facts that do not appear on the face of the petition, as, for example, forgeries and false affidavits. We are unable to refute that argument. The secretary of state is without the power to even summon witnesses, let alone compel them to testify, and so is powerless against the wrongs mentioned in the complaint unless they appear on the face of the petition or are voluntarily made otherwise to appear. We do not see how the conclusion can be avoided that in those respects there is no adequate remedy at law. Ought it to be said that the courts are without power in such matters and that such wrongs must go unredressed? It is true that some states have said that the proceedings before the secretary of state and the review thereof by the courts is an exclusive and adequate remedy, but we cannot so regard it until the legislature expressly says so.

It is argued that the court has no power to interfere with an election. Various cases are cited to that effect with which we do not disagree and others with which we do disagree, but the preliminaries to an election, for example, registration, may be interfered with. *Aichele v. People,* 40 Colo. 482, 487, 90 Pac. 1122. It was there held that the certification of fraudulent registration lists was preliminary and so could be enjoined. See *Duggan v. Emporia,* 84 Kan. 429, 114 Pac. 236, 238; *State v. Holcomb,* 83 Kan. 256, 111 Pac. 188. So here, the petition is a preliminary to an initiated election, and if fraudulent, may not be given effect, but such fraud may be the basis of an injunction against the submission of the subject of the petition to vote, which submission is also a preliminary of the election. If we do not hold in this way, we shall be compelled to say that if a petition with a sufficient number of names, on its face valid, should be laid before the secretary of state, it could not be successfully attacked even though every name were forged and every affidavit attached to it were false. The Supreme Court of Missouri (*Carson v. Sullivan,* 284 Mo. 353, 223 S. W. 571) held that the secretary of state might be enjoined from putting on the ballot a referendum not authorized by law, and many authorities are there cited. This court has uniformly looked in that direction (*Leckenby v. Post Co.,* 65 Colo. 443, 449, 176 Pac. 490) and the same case also holds that the private individual taxpayer, may resort to a court of equity to restrain by injunction the misapplication of public funds, which will take place if the matter now in question is placed on the ballot. So in *Packard v. Board of County Com'rs,* 2 Colo. 338, the same doctrine is approved on page 350 with citations, and a somewhat similar case is *Denver v. Pitcher,* 54 Colo. 203, pages 224, 225, 129 Pac. 1015, and in *Crampton v. Zabriskie,* 101 U. S. 601, where the right of taxpayers to invoke equity is expressly affirmed. Here, however,

the state brings the action to protect the integrity of her own legislation.

It is claimed that there is another suit pending, but such fact does not appear on the face of the complaint and so it is not ground of demurrer; furthermore, as we have seen, the proceedings before the secretary were inadequate to some of the questions raised by the complaint and those proceedings are the only proceedings which are claimed to constitute the other pending suit; there is therefore no force in this claim.

The objection that the names protested were not specified, if good in the protest case, is not good in this equity case. No names are protested here and the requirements of said section 31 do not relate to ordinary suits in court.

There remains also the objection of the mutilation of the sections of the petition. That is valid here as in the other proceeding. It is not necessary here, but it might be necessary, if the mutilation were concealed so as not to be otherwise discovered, to attack the petition on that ground in equity in order to prove the mutilation.

We think the court did right in admitting the interveners, Dungan, Wichter and Miller as parties. The judgment of the district court in this case as well as in 11,689 is accordingly reversed.

Mr. Justice Campbell not participating.