No. 8926.

LANDRUM ET AL., v. RAMER.

1. RECALL FROM OFFICE—*Protest—Duty of Secretary of State.* The Secretary of State is not under duty to immediately file in his office, a paper presented to him as a petition for an election to recall an officer.

It is his duty to examine what is presented, and determine whether it complies with the requirements of the constitutional amendment (Laws of 1913, 673 sec 2), and he is entitled to a reasonable time for such examination.

2. —— *Petition—When Filed.* A petition for the recall of an officer was presented to the Secretary of State, and was indorsed by him "Received for Consideration November 2, 1915," and was finally filed by him on the 12th. A protest was filed on the 27th of the same month. It was shown that at the presentation of the petition, it was agreed between the Secretary and those in charge of the petition, that the paper should not be filed until the Secretary had carefully examined it. The delay in the examination was sufficiently excused. *Held* that the petition was in fact filed on the 12th, and not on the 2d of November, and the protest was in time.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

*En banc.*

Mr. THOMAS WARD, JR., for plaintiffs in error.

Hon. FRED FARRAR, Attorney General; Mr. FRANCIS E. BOUCK, Deputy Attorney General, Messrs. JOHN F. MAIL and ALLEN & WEBSTER, for defendant in error.

Opinion by Mr. Justice Teller.

THIS cause is before us on error to a judgment of the District Court affirming the action of defendant in error, as Secretary of State, in holding insufficient a petition, filed with him for the recall of the judge of the Thirteenth Judicial District.

Under the constitutional amendment which provides for the recall of officers, a period of fifteen days after the filing of a recall petition is allowed for the filing of protests.

The protest in this case was filed on the 27th day of November, 1915, and plaintiffs in error insist that the petition was, in law, filed on the 2nd day of November; hence the protest came too late.

It is conceded that the defendant in error, the Secretary of State, gave to the parties who delivered the petition to him a receipt as follows: "Received for consideration on November 2nd, 1915"; and he alleged in his answer and testified that it was agreed between him and said parties that the petition would not be filed until he had carefully examined it. The testimony in this respect is fully corroborated. Evidence was introduced to show why so great a delay occurred in passing on the sufficiency of the petition preliminary to its filing.

The court found, as a fact, that the committee "acquiesced in the suggestion made by the Attorney General that the Secretary of State would receive it for examination and not at that time for filing"; also, that, under the testimony, the time consumed was reasonable.

The record contains nothing which justifies the reflections made by counsel for plaintiffs in error on the good

faith and fairness of the Secretary of State. He acted upon the advice of the Attorney General, and evidently tried to do his duty.

This finding that the petition was received by the officer for examination, and not for present filing, being fully supported by the evidence, is binding upon us. The parties having agreed that the petition should be filed when the officer had found it sufficient, cannot now be heard to say that it was, as a matter of law, filed when delivered.

This does not present the question which would have arisen had the committee delivered the petition *for filing* at that time. Here they delivered it for consideration, and to be filed subsequently if found entitled thereto.

Counsel for plaintiffs in error, however, insist that the question to be determined is: Was the petition filed on November 2, 1915, when delivered to the Secretary of State, or at the time the filing indorsement was placed thereon?

Opposing counsel have fully discussed that question, and in view of its importance, it ought, perhaps, to be determined, especially as it has been suggested that though the filing mark was not placed upon it until the 12th, the filing dated back, in legal effect, to the day on which the Secretary of State received the instrument.

The recall amendment provides that:

"All petitions shall be deemed and held to be sufficient if they appear to be signed by the requisite number of signers, and such signers shall be deemed and held to be qualified electors, unless a protest in writing under oath shall be filed in the office in which such petition has been filed, by some qualified elector, within fifteen days after such petition is filed, setting forth specifically the grounds of such protest * * *

"When such petition is sufficient, the officer, with whom such recall petition was filed, shall forthwith submit said petition, together with a certificate of its sufficiency to the Governor." Constitutional Amendment, Recall from Office, Session Laws, 1913, Section 2, pp. 673-674.

It is urged that a petition "should be filed when received, without an examination by the Secretary of State, or the person in whose office the petition for recall is filed."

This view was rejected by the trial court, and we think rightly so.

If counsel's contention is right, the officer has nothing to do but to receive the collection of papers bearing signatures, and file them as a recall petition. This is not consistent with the known purpose of the amendment, nor with its language.

It provides for a series of steps leading up to a recall election, and the first act which partakes of an official character is the filing of a recall petition in the office of the Secretary of State. The instrument to be filed is to be of the form and substance prescribed by the amendment, and nothing short of that is a petition with a right to be filed. Until there is such a petition, the movement for an election is not initiated.

The importance of this instrument is fully recognized in the amendment by the several provisions concerning it. The signers must be qualified electors; each one must add to his signature the date of signing and his place of residence, with street and number, if in town or city; and the genuineness of the signatures must be attested under oath by the circulator of the sheets for signature. The petition is to contain a statement of the grounds of recall, in not more than two hundred words, and must be signed by electors in number equal to one quarter of the vote cast at the last preceding election. Each section of the petition must contain its full title and text.

In the light of these facts, how can it be supposed that the officer, to whom certain official duties are committed by the filing of a petition, has no right to determine whether or not the papers filed, in fact, constitute a petition?

If he must accept and act upon a collection of sheets which *appear* to be a petition, though not in fact a petition within the definition of the amendment, all these specifications, which constitute such definition, are of no effect.

On that postulate, a collection of sheets with numerous signatures being filed, and no protest made, the Secretary of State in due time certifies them to the governor, and an election is called and held on a so-called petition which may not comply with the most important provision of the law.

The tax payers of the state, or a district, are burdened with the cost of an election on the petition of a far smaller number of signers than the people by this amendment decided should be required to set the recall machinery in motion.

This result is inevitable if the Secretary of State is a mere depositary of the papers alleged to be a petition. Unless some elector protests within fifteen days, the papers become in effect a petition no matter how defective in form or matter.

Such a construction should be adopted only upon the clearest necessity, and no such necessity exists.

The language of the amendment is not that all petitions shall be deemed sufficient if they *appear to be petitions,* but, if they appear to be signed by the requisite number of signers. A signature is not complete, and the writer of it not a "signer" in the sense of the amendment, unless there be added the date of signing and place of residence. Until it has been determined that the requisite number of persons have signed, and added to their signatures the matters required, and the verifying affidavits have been made, no one can say that there is a recall petition at all. These matters can be determined from the papers by inspection and computation; but the one important question which could not be so determined, to-wit: Whether or not the signers are qualified electors, need not be considered in the first instance; their qualification is presumed until a protest is filed. This is a reasonable and almost necessary provision, in order to make it possible to file a petition within a reasonable time after it is presented. There is no such reason for presuming correctness as to the matters which appear on the face of the papers, and

it is worthy of notice that there is but one of all the requirements to which this presumption attaches. Why does not the old maxim apply: "*Expressio unius est exclusio alterius*"?

The authorities cited on this point by the plaintiffs in error do not support the contention. They refer to the filing of bonds, etc., properly holding that an instrument which is received for filing is in law then filed although the filing marks are not put on until later. However, even in cases of ordinary instruments, in jurisdictions where only acknowledged or certified instruments are entitled to record, the officer receiving them must by examination determine whether or not they may be filed. A deposit with him is not a filing.

From the above consideration it results that the petition was not filed until November 12th and the protest was in time.

The judgment is therefore affirmed.

*Judgment affirmed.*

Mr. Justice White dissents.

Chief Justice Hill and Mr. Justice Scott not participating.