No. 13,608.

HARAWAY ET AL. v. ARMSTRONG, SECRETARY OF STATE ET AL.
(36 P. [2d] 456)

Decided September 27, 1934.   Rehearing denied October 1, 1934.

Mr. W. D. Wright, Jr., Mr. Joseph C. Sampson, for plaintiffs in error.

Messrs. Ponsford & Pender, Mr. E. J. Plunkett, Mr. Frank Safranek, Mr. James D. McGuire, for defendants in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Matter of an initiated petition for a proposed law. Plaintiffs in error questioned the sufficiency of the petition before the secretary of state, but were unsuccessful, and on review in the district court failed again. They assign error. Defendants in error are the secretary of state and those designated in the petition to represent the signers.

It appears that 35,303 qualified petitioners were necessary, and that the petition contained 50,383 signatures, or 15,080 in excess of the required number. On hearing before the secretary of state 6,686 names were stricken, leaving, as found by that official, 43,697 names of qualified petitioners, or 8,394 more than were needed.

Before the secretary of state, and in the trial court, protestants challenged the petition on numerous grounds, but here they urge only three propositions, "going" as counsel say, "to the integrity of the entire petition, * * * and will be determinative of the entire matter." Briefly, the reserved points are: (1) That the

addresses of petitioners and dates of signing added to the signatures by others invalidated the signatures; (2) that inasmuch as certain names of signers and added addresses and dates were lined out (stricken) by those in charge of the petition before filing, the entire sections where this occurred were invalidated; (3) that in many instances sections of the petition, although not vulnerable otherwise, were supported by affidavits of circulators, shown as to other sections, so it is said, to have so deported themselves that they were unworthy of belief, hence their work should be wholly disregarded. The protestants appreciate, and frankly say, that only through eliminating names in large blocks may the petition be so reduced in number of signatures as to defeat the purpose of its sponsors to have the proposed measure placed on the ballot at the ensuing general election. It is informative to say that an initiated petition, such as the one now claiming our attention, however large the total number of petitioners required, is made up of sections, each section, never to contain in excess of twenty-five names, is verified by the circulator, and, save for manifest or shown weakness, is complete in itself.

█ 1. We think that since neither the Constitution nor statute specifically requires the signer to add his address and date of signing, such additions, although preferably done by the petitioner, may be by another. *O'Brien v. Pyle,* 51 So. Dak. 385, 214 N. W. 623, cited to the contrary, is based on the statute of that state, which in terms requires the signer to make such additions in his own handwriting. The purpose of the required data, as we perceive, is that those interested in protesting may be apprised of that which will enable them conveniently to check the petition.

█ 2. Until filed with the secretary of state, the petition, composed of its several sections, was in no sense a public document. The sponsors, in the absence of venality, and none appears, rightly, and righteously should have, checked the petition before tendering it for

filing, and in lining out duplicate or other questionable names, in the circumstances appearing, did nothing that should require the elimination of entire sections, thereby making nugatory the petitioning effect of qualified signers. It is worthy of note that in considering the matter, the secretary of state did not find that the circulators of sections where duplication of names occurred or signatures or additions were imperfect for any reason, were possessed of evil purpose or actuated by improper motives. The trial court upheld the secretary and we do not feel justified in disturbing the holding. That carelessness attended in some instances is apparent, but when the administrative state official having first authority, attaching no evil blame to the circulators, had eliminated the names thus improvidently finding place on the petition, the demands of the law were satisfied.

3. Much we have said on point 2 is applicable on this one. We have given the best attention to the record the haste enjoined has admitted. It does not appear to us, and in this we are fortified in the determination made by the secretary of state and trial court, that what one or more of the circulators did in relation to certain sections of the petition, as the result of which many names, and in instances whole sections were thrown out by the secretary of state, so partook of improper motives as to make all the work of these circulators abortive. Counsel for plaintiffs in error say the situation is to be likened to that of an election contest where when it is found impossible to separate the legal from the illegal ballots in a precinct, the entire poll should be excluded. That there is such a rule, and that in proper cases its invocation is salutary, must be recognized; but here the secretary of state experienced no difficulty in discriminating between the formally correct sections and the informal or erroneous sections. Thus discerning, that official was justified in approving all sections not in themselves invalid or shown to be so

under proper challenge, and including the names in those sections in computing the total of qualified petitioners.

4. Although it is not emphasized as a major point, protestants call attention to a contention they make that the court should have eliminated nearly one thousand names challenged because in adding the date of signature the year was omitted. They cite *Miller v. Armstrong*, 84 Colo. 416, 270 Pac. 877, where the court said: "We are of the opinion that dates in which the year was omitted are insufficient because it would permit fraud by using the separated sheets in later petitions for other purposes and thus frustrate the purpose of the dates." At the time of that review it seems a section of a petition comprised four sheets, with one verification at the bottom of the last sheet. Now, but one sheet of signatures is allowed to a section and the verification appears on that sheet. The date of the oath fixes the year, and since it is part of the sheet of signatures, the apprehension expressed by Mr. Chief Justice Denison in 84 Colorado would not now obtain. Besides, the record here shows that the year "1934" is conspicuously printed on each sheet. The circumstances in mind, we cannot think the omission of the year in the instances pointed out, the date otherwise appearing, was vital.

We conclude, as did the secretary of state and trial court, that the petition is sufficiently signed by competent petitioners, and the proposed measure should be accorded place on the ballot in manner and form as provided by law. The issue rests with the people.

Let the order be that the judgment is affirmed.

Mr. Chief Justice Adams and Mr. Justice Holland not participating.